No. 13814

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

DAVID A. ERDMAN,

Plaintiff and Respondent,

-vs-

C & C SALES, INC., et al.,

Defendants and Appellants.

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellants:

Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana
Donald J. Hamilton argued, Great Falls, Montana

For Respondent:

Burton and Waite, Great Falls, Montana
Charles M. Cruikshank III argued, Great Falls, Montana

Submitted: January 23, 1978

Decided: MAR 27 1978

Filed: MAR 2 1978

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants C & C Sales, Inc., and Robert F. Jorgenson and James M. Wylder, doing business as C & C Sales, appeal from a judgment of the district court, Cascade County, and from the denial of their motions to amend the District Court's findings of fact, conclusions of law and judgment and for a new trial.

Plaintiff David A. Erdman brought this action against C & C Sales, Inc., and defendants Jorgenson, Wylder, and Thomas McGowan individually, doing business as C & C Sales, to recover commissions on sales plaintiff made while an employee of C & C Sales. Following trial the District Court, sitting without a jury, entered judgment against C & C Sales, Jorgenson and Wylder jointly, severally, and individually, in the amount of $6,259.80.

Prior to September 25, 1974, C & C Sales was an unincorporated business located in Great Falls, Montana, engaged in the selling and servicing of liquor dispensing and other beverage equipment throughout Montana. C & C Sales had been organized by Jorgenson and Wylder, who were also officers of the Great Falls Coca Cola Bottling Company. The record discloses that in some respects C & C Sales and the bottling company shared common operation under Jorgenson and Wylder. C & C Sales utilized the bottling company's offices and secretarial personnel. C & C's books were kept as a part of the bottling company's books and disbursements attributable to C & C were made from bottling company funds. The area dealership of one line of liquor dispensing equipment handled by C & C was in the name of the "coca cola company."

In June 1974, Thomas McGowan was hired by C & C Sales, some four months before C & C was incorporated. Plaintiff, who then lived in Saginaw, Michigan, was contacted by McGowan

in August 1974 and invited to meet with McGowan, Jorgenson and Wylder for a job interview. At this meeting, held in Lincoln, Montana, over the Labor Day weekend of 1974, plaintiff's proposed salary and employment benefits were discussed but no agreement was reached. Shortly thereafter plaintiff was hired as a salesman by C & C Sales. This was approximately a month before C & C Sales was incorporated.

In a "work agreement" dated September 4, 1974, signed by McGowan, plaintiff's compensation was set at $150 per week in salary, a regular commission of 10% on sales made by plaintiff, and override commissions of 2% on sales of one line of liquor dispensing equipment, and 3% sales made by the sales staff excluding those made by plaintiff or McGowan. The agreement also stated C & C Sales would pay plaintiff's business expenses and expenses incurred in moving from Michigan to Montana.

On September 25, 1974, C & C Sales was incorporated with Jorgenson, Wylder and McGowan as officers. Both before and after the incorporation plaintiff sold various products for C & C Sales around the state. He was regularly paid a 10% commission on these sales as well as his $150 per week salary. Plaintiff neither received nor demanded any override commissions during this time.

In November 1974, McGowan was fired by Jorgenson and Wylder. A few days later plaintiff also was fired. Following his termination plaintiff requested payment of the override commissions he alleged were due him under the September 4, 1974 work agreement. C & C refused to pay any override commissions.

On appeal, the issue is whether the District Court's findings of fact, conclusions of law and judgment are supported by the evidence. Defendants specifically challenge the District Court's determinations that Jorgenson and Wylder were personally liable for the money owed plaintiff pursuant to his employment

by C & C Sales and that plaintiff was entitled to override commissions.

Defendants Jorgenson and Wylder contend they organized and operated C & C Sales as a part of the bottling company rather than as a separate business of their own. Plaintiff's contention is that C & C was distinct from the bottling company from its inception and was operated by Jorgenson and Wylder as a general partnership, until it was incorporated some three weeks after plaintiff was hired.

Each side asserts the evidence supports their respective claims as to the status of C & C Sales as of the time plaintiff began working for C & C. Plaintiff's testimony shows he was told by McGowan initially that McGowan worked for "coca cola" and later that "coca cola" would arrange for the lease and insurance on the automobile plaintiff would receive as a company car. Plaintiff also testified he was told, before he was hired, that the "coke" insurance plan might be available to him.

The bottling company secretary who kept the books of both C & C Sales and the bottling company testified the accounts of the two operations were not completely separated until C & C was incorporated and that certain amounts, such as those concerning expense money advances to plaintiff, were never broken down for attribution to the proper account. As to other amounts, however, the records of C & C Sales and the bottling company were distinguishable.

A key factor with regard to the question of C & C's identity and the question of plaintiff's entitlement to override commissions was the position of Thomas McGowan within the two operations. Although named a party defendant, McGowan took no part in this action. He apparently had left Montana.

Wylder testified McGowan had no independent authority within C & C Sales. Jorgenson testified McGowan was hired as a

salesman with the understanding he might later have a management position. Plaintiff testified he was told by Wylder and Jorgenson from the start that McGowan was "one-third" of C & C Sales and his understanding was that McGowan managed C & C. Whatever McGowan's status was prior to C & C's incorporation, thereafter he was on the board of directors of C & C and served as its president until his termination. However, McGowan never did hold an office or an interest in the bottling company.

The parties dispute whether testimony as to McGowan's position within C & C Sales establishes that C & C was a separate operation or an integral part of the bottling company. Also in dispute is the effect of testimony offered by both sides concerning McGowan's authority to enter into the work agreement which provided for plaintiff's override commissions. The thrust of testimony of Jorgenson and Wylder was that McGowan never had authority to set terms and conditions of employment.

On the other hand, uncontradicted testimony showed that McGowan hired a serviceman for C & C Sales, told the man what his compensation would be, and the man received the promised amounts. It was also established that on McGowan's recommendation another C & C employee was fired. Other testimony indicating McGowan's authority included references to his performance of managerial tasks, such as purchasing equipment from manufacturers for sale by C & C.

Plaintiff testified he was told by Jorgenson and Wylder at the meeting in Lincoln that McGowan had the authority to "finalize" the details of plaintiff's employment, and during the time he worked for C & C, McGowan exercised control over C & C's operations.

Defendants contend plaintiff's failure to demand override commissions during the time he was working for C & C Sales operates as a waiver of whatever right he had to these commissions.

Plaintiff argues his failure to demand override commissions during the three month period he was employed by C & C Sales should be balanced against defendants' failure to disavow the work agreement, when it first became known to them.

Taken as a whole, the District Court's findings of fact and conclusions of law resolve the central factual disputes in plaintiff's favor. Taken alone, some of the findings of fact reflect an apparent lack of uniformity in the District Court's conception of the C & C Sales operation. In finding of fact I, C & C Sales is characterized as an "unincorporated division of Great Falls Coca-Cola Bottling Company managed by Robert Jorgenson, Jr." Findings II and III characterize McGowan as a "sales employee" of the bottling company prior to its incorporation. In finding of fact VIII, the District Court found Wylder, McGowan and Jorgenson "regarded the operation of C & C Sales as a departmental function of Great Falls Coca Cola Bottling Company." Finding of fact IX states McGowan "was regarded by all as the general manager" of the C & C Sales operation.

In Ballenger v. Tillman, 133 Mont. 369, 378, 324 P.2d 1045 (1958), this Court stated:

> "' * * * findings of fact are to receive such
> a construction as will uphold rather than de-
> feat the judgment thereon.'"

The judgment clearly imposes individual liability on Jorgenson and Wylder. Therefore, whether that judgment is proper depends upon whether the findings as construed to sustain the judgment are supported by the evidence.

Two principles of appellate review, as stated in Merritt v. Merritt, (1974), 165 Mont. 172, 526 P.2d 1375, are basic to our function as an appellate court:

> "' * * * the function of this Court is to deter-
> mine whether there is substantial evidence to
> support the findings of the trial court, and we
> will not reverse such findings of fact unless

there is a clear preponderance of evidence against such findings. * * *'

"' * * * The credibility of the witnesses and the weight to be given their testimony is a matter for the district court's determination in a non-jury case * * * and the Supreme Court will sustain such determination by the trial court based on substantial conflicting evidence.'" 165 Mont. 177-178.

There was conflicting and in some instances confusing evidence presented to the District Court. There was substantial evidence adduced at trial in support of the District Court's determinations that C & C Sales was operated by Jorgenson and Wylder as a separate business from the bottling company, and that McGowan was given the authority to set terms and conditions of plaintiff's employment. The District Court's conclusions that these defendants failed to timely disavow plaintiff's work agreement and had accepted the benefits therefrom are also sound. As this Court has often stated, "findings of fact and conclusions of law of the trial court must be read in toto * * *." Montana Mobile Home Court v. Finley, (1973), 163 Mont. 7, 10, 514 P.2d 762; Erickson v. Fisher, (1976), ____Mont.____, 554 P.2d 1336, 33 St.Rep. 947, 950.

Our review of the entire record fails to disclose a preponderance of the evidence against the District Court's findings, conclusions and judgment.

Heretofore, we have discussed this case on its merits. Plaintiff has raised questions concerning the appeal as well, our consideration of which follows.

Plaintiff first contends the appeal should be dismissed on the ground his judgment has been satisfied. The record discloses judgment was entered on December 30, 1976, with notice of entry of judgment filed on January 6, 1977. The District Court then stayed execution of judgment pending resolution of defendants' motions to amend the findings of fact and conclusions

- 7 -

of law and for a new trial. On February 4, 1977, after a hearing, these motions were denied; the order to that effect was mailed to defendants' attorney on February 7, 1977. On the same day, plaintiff executed on the bank account of one of defendants. Before the sheriff delivered this money to plaintiff, and before entry of satisfaction of judgment, defendants moved to stay disbursement and to file a supersedeas bond. After a hearing these motions were granted, a supersedeas bond was posted, and the money received upon execution was returned to defendant's bank

Plaintiff's motion to dismiss the appeal was briefed and argued before this Court, along with arguments on the merits. Plaintiff relies on Gallatin Trust and Savings Bank v. Henke, (1969), 154 Mont. 170, 177, 461 P.2d 448, and Gallatin Trust and Savings Bank v. Foster, (1969), 154 Mont. 185, 191, 461 P.2d 452, cases in which this Court held the failure of an unsuccessful party to post a supersedeas bond as provided by Rule 7(a), M.R.App.Civ.P., subjects that party's rights to execution, subsequent satisfaction of the judgment, and possible mootness, as far as appeals are concerned. In each case, satisfactions of judgments were entered and no supersedeas bonds were posted.

The present case is distinguishable from Henke and Foster. Here, defendants brought into play Rule 7(a) provisions for staying judgments as soon as practicable upon receipt of the order disposing of their post-judgment motions to amend the findings and conclusions and for a new trial. The District Court's grant of a stay of disbursement and defendants' posting of a supersedeas bond precluded satisfaction of plaintiff's judgment. Therefore, plaintiff's motion to dismiss this proceeding is denied.

Plaintiff next contends he is entitled to damages, alleging the present appeal is without merit. Rule 32, M.R.App. Civ.P., provides:

- 8 -

"If the Supreme Court is satisfied from the record and the presentation of the appeal, that the same was taken without substantial or reasonable grounds, but apparently for purposes of delay only, such damages may be assessed on determination thereof as under the circumstances are deemed proper."

Here, the question of the sufficiency of the evidence to support the District Court's findings of fact and conclusions of law and judgment was reasonably in issue. Where there is a reasonable ground for appeal a respondent is not entitled to recover damages under Rule 32, M.R.App.Civ.P. Larry Larson & Associates v. John R. Dailey, Inc., (1971), 158 Mont. 231, 236, 490 P.2d 355.

Finally, plaintiff contends he is entitled to additional attorney fees to cover costs incurred as a result of defendants' post-trial motions and appeal. Plaintiff was awarded attorney fees by the District Court pursuant to section 41-1306, R.C.M. 1947, by the terms of the judgment. We agree plaintiff is entitled to reasonable additional attorney fees, and remand this cause to the District Court for their determination.

The judgment of the District Court is affirmed and the cause remanded for further proceedings consistent with this opinion.

_Daniel J. Shea_
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_
Justices

_Robert J. Boyd_
Hon. Robert Boyd, sitting in place of Mr. Chief Justice Paul G. Hatfield.