No.  93-619

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

WILLIAM G. SHULL, d/b/a GAMO,

        Plaintiff, Appellant,
        and Cross-Respondent,

   v.

FIRST INTERSTATE BANK OF GREAT FALLS,
a corporation; ZYCOM, INC.; CAPITAL
DEVELOPMENT COMPANY; NORTH CENTRAL
GAMING CO., a Montana corporation,

        Defendants and Respondents,

   and

THOMAS C. HABETS,

        Defendant, Respondent,
        and Cross-Appellant.


APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

               Joe Bottomly and Anne Biby, Bottomly
               Law Office, Kalispell, Montana

        For Respondents:

               Robert J. Emmons, Emmons & Sullivan,
               Great Falls, Montana (for Zycom, Inc.,
               and Capital Development Company)

               Gary S. Deschenes, Deschenes Law Office,
               Great Falls, Montana (for Thomas C. Habets)

FILED

DEC 15 1994

Filed: *Ed Smith*

**CLERK OF SUPREME COURT
STATE OF MONTANA**

Submitted on Briefs:  October 28, 1994

Decided:  December 15, 1994

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellant William G. Shull, d/b/a Gamo, filed a complaint on April 19, 1988, in the District Court for the Eighth Judicial District in Cascade County against First Interstate Bank of Great Falls, Zycom, Inc., Capital Development Company, North Central Gaming Company, and Thomas C. Habets. In his complaint, Shull alleged breach of contract, bad faith, negligence, tortious interference with contract, and breach of fiduciary duty. On June 7, 1993, after a trial, the jury found that First Interstate Bank breached its lease agreement with Shull. The District Court ordered First Interstate Bank to pay Shull contract damages, attorney fees, and costs. The jury found that Zycom did not breach the contract, and the District Court ordered Shull to pay Zycom's attorney fees and costs. Shull appeals that part of the District Court's order which awarded attorney fees and costs to Zycom. We reverse that part of the District Court's order.

Cross-appellant Thomas Habets requested that the District Court set aside or amend its judgment and impose Rule 11, M.R.Civ.P., sanctions against Shull and his attorneys. The District Court denied this motion. We affirm the District Court's denial of sanctions.

The following issues are raised on appeal:

1. Did the District Court err when it awarded attorney fees and costs to Zycom?

2. Did the District Court err when it denied Habets' motion for an award of sanctions against Shull and his attorneys pursuant to Rule 11, M.R.Civ.P.?

3. Should sanctions be imposed against Habets for filing a frivolous appeal?

## FACTUAL BACKGROUND

William G. Shull leased space in the Great Falls Westgate Shopping Center from First Interstate Bank on September 28, 1984, for the operation of a video arcade, known as Gamo. The agreement provided for a three year lease with the option to renew for an additional three years. The agreement also gave Shull the exclusive right to operate a video arcade in Westgate.

After approximately three years, Shull expressed his intent to exercise the option to renew his lease. However, a new lease agreement was not provided; as a result, Shull stated in a letter to Westgate's manager that he assumed that his old lease would remain in force until a new one was signed.

On December 29, 1987, First Interstate assigned the leases in Westgate to Zycom, Inc., a Washington corporation. Zycom then leased space to another video arcade. Shull was informed that his lease was a month-to-month tenancy, and in March 1988, he was notified that his tenancy was terminated.

On April 19, 1988, Shull filed a complaint against First Interstate Bank, Zycom, Inc., Capital Development Company, North Central Gaming Company, and Thomas C. Habets. Shull asserted

3

claims based on breach of contract, bad faith, negligence, and tortious interference with contract against First Interstate. Shull asserted claims based on breach of contract, bad faith, and tortious interference with contract against Zycom and Capital Development Company (Zycom's successor). Shull also asserted claims based on bad faith, tortious interference with contract, and breach of fiduciary duty against North Central Gaming Company (the company that owned and maintained Gamo's video machines), and Thomas Habets, North Central Gaming Company's owner. Shull also alleged that First Interstate, North Central Gaming Company, and Habets conspired to interfere with his contractual rights. He requested compensatory damages for loss of past, present, and future income and profits from Gamo, lost business opportunities, and the lost value of his exclusive right to a video arcade at Westgate. Shull also requested punitive damages, attorney fees, and costs.

Shull moved the District Court to conclude by partial summary judgment that he had validly exercised his option to renew his original lease. The defendants moved the District Court to conclude by summary judgment that the option had not been validly exercised. On February 21, 1991, the District Court granted Shull's motion for partial summary judgment, and held that Shull had validly renewed his three year lease agreement with Zycom by the time that he was evicted. After trial, First Interstate was

4

found by the jury to have breached that agreement. However, the jury found that Zycom had not breached the agreement.

Shull's lease agreement provided that if Shull breached the agreement he would have to pay attorney fees and costs caused by his breach. Section 21, paragraph C, of Shull's lease provides that:

> In the event of any breach hereinunder by Tenant, Landlord may immediately or at any time thereafter, without notice, cure such breach for the account and at the expense of Tenant. If Landlord at any time, by reason of such breach, is compelled to pay, or elects to pay, any sum of money or do any act which will require the payment of any sums of money, or is compelled to incur any expense, including reasonable attorney's fees, in instituting or prosecuting any action or proceeding to enforce Landlord's rights hereunder, the sum or sums so paid by Landlord, with interest thereon at the rate of twelve percent (12%) per annum from the date of payment thereof, shall be deemed to be additional rent hereunder and shall be due from Tenant to Landlord on the first day of the month following the payment of such respective sums or expenses.

Pursuant to § 28-3-704, MCA, the attorney fees provision is reciprocal; consequently, Shull had the same contract rights to attorney fees and costs that First Interstate had.

On September 16, 1993, pursuant to the jury's verdict and post-trial motions, the District Court ordered that judgment be entered in favor of Shull and against First Interstate in the amount of $5818.75; and that Shull be awarded costs in the amount of $3144.84, and attorney fees in the amount of $21,044.16; however, the amount of attorney fees awarded to Shull was later reduced. It was also ordered that judgment be entered in favor of Habets and North Central Gaming Company. Shull was ordered to pay

5

$40 in costs to both Habets and North Central Gaming Company. Finally, it was ordered that judgment be entered in favor of Zycom and Capital Development Company and against Shull, and that Shull pay costs in the amount of $479.75 and attorney fees in the amount of $14,413.50 to Zycom.

Shull was awarded attorney fees and costs pursuant to the reciprocity rule found at § 28-3-704, MCA. Zycom was awarded attorney fees and costs for unspecified reasons, but claims a right to that award as the "prevailing party" under the same rule.

On September 30, 1993, Habets filed a motion to set aside and amend the District Court judgment and requested that Rule 11 sanctions be imposed on Shull and his attorneys. The District Court denied Habets' motion. Habets appeals only the denial of his motion for the imposition of sanctions.

Habets' motion for sanctions is based on Shull's bankruptcy proceeding. In 1985, Shull was unable to meet his financial obligations and was forced to file for Chapter 11 reorganizational bankruptcy. During that time, Habets supplied and serviced video games in Shull's Westgate Mall video arcade.

Shull listed his assets with the bankruptcy court, including the Gamo video arcade, but did not list Gamo as a partnership. The affidavit of Shull's attorney indicates that Shull's bankruptcy reorganization was confirmed on April 8, 1987.

Later, when filing this action, Shull's attorney formed the opinion that Shull may have had a de facto partnership with Habets,

6

and on that basis, filed his claim for breach of fiduciary duty. Habets asserts that sanctions should be imposed against Shull and his attorneys for arguing inconsistent positions in two separate cases. Shull's attorneys argue that Shull did not even know that there was such a thing as a de facto partnership when he filed for Chapter 11 reorganization, and that neither they nor Shull acted in bad faith. The District Court denied Habets' motion for sanctions.

## ISSUE 1

Did the District Court err when it awarded attorney fees and costs to Zycom?

The standard of review of a district court's conclusions of law is whether the district court's interpretation of the law was correct. *In re Marriage of Barnard* (1994), 264 Mont. 103, 106, 870 P.2d 91, 93, (citing *In re Marriage of Burris* (1993), 258 Mont. 265, 269, 852 P.2d 616, 619).

We have generally held that attorney fees cannot be recovered unless they are provided for by statute or contract. "[I]n the absence of a statutory or contractual provision, attorney fees are not recoverable." *Wyman v. DuBray Land Realty* (1988), 231 Mont. 294, 297, 752 P.2d 196, 198 (citing *Sliters v. Lee* (1982), 197 Mont. 182, 184, 641 P.2d 475, 476). Zycom argues that it is entitled to attorney fees and costs as a prevailing party pursuant to § 28-3-704, MCA. However, as the assignee of First Interstate's rights under the lease agreement, Zycom's rights are those set forth in the agreement. Pursuant to the contract, First Interstate

7

could only recover costs and fees in the event of Shull's breach of the contract.

Section 21, Paragraph C, of Shull's lease agreement with First Interstate provides in relevant part as follows:

> In the event of any breach hereinunder by Tenant, Landlord may immediately . . . cure such breach . . . at the expense of Tenant. If Landlord at any time . . . is compelled to pay, or elects to pay, any sum of money . . . or is compelled to incur any expense, including reasonable attorney's fees, in instituting or prosecuting any action or proceeding to enforce Landlord's rights hereunder, the sum or sums so paid by Landlord . . . shall be deemed to be additional rent hereunder and shall be due from Tenant to Landlord . . . .

The reciprocal attorney fee statute provides rights only to that party whose rights are not provided for in the contract. We have previously addressed this same issue in *Sliters v. Lee* (1982), 197 Mont. 182, 641 P.2d 475. In that case, Lee executed a promissory note in favor of Ross which provided that Ross was entitled to attorney fees, if incurred to enforce collection of the note. Ross later assigned his interest in the note to Sliters. Lee refused to pay the note when due, and Sliters sued him for collection. Lee filed a third-party complaint against Ross alleging fraudulent inducement for the note, wrongful assignment of the note, and lack of consideration.

Sliters prevailed in its claim to recover for payment of the note, and Ross prevailed in his defense against Lee's third-party complaint. Ross then successfully contended in the district court that he was entitled to an award of attorney fees under the same

8

reciprocal attorney fee statute relied upon by Zycom in this case. The district court agreed; however, we reversed. We held that:

> Ross's right to attorney fees was not derived by virtue of any reciprocal right under the statute. Lee was the maker of the note and was granted no right to attorney fees thereunder. As payee of the note, Ross was the only party granted any right to attorney fees, under the provisions of the note.
>
> Thus Ross's right to attorney fees must stand or fall upon the provisions of the note. Ross assigned all his right, title and interest in the note to Sliter's, leaving him no remaining contractual right to attorney fees under the provisions of the note. Moreover, Lee's third party complaint against Ross alleged fraudulent inducement for the note, wrongful assignment, lack of consideration and sought to require Ross to pay Sliter's the amount owing on the note together with damages and attorney fees. It was not an action for collection of the note for which attorney fees were expressly provided. Thus Ross was not entitled to an award of attorney fees under the provision of the note.

*Sliters*, 641 P.2d at 476 (emphasis added).

Likewise, in this case, Shull had no right to attorney fees under the lease agreement, and Zycom's right to attorney fees could not be a reciprocal right under the statute. It had those rights provided for under the contract assigned to it by First Interstate. Therefore, Zycom was only entitled to attorney fees and costs if Shull breached the lease, and Zycom incurred attorney fees or costs to enforce the terms of the lease. Shull did not breach the lease, therefore, Zycom is not entitled to attorney fees or costs. We will not expand § 28-3-704, MCA, to allow attorney fees and costs to Zycom simply for prevailing on a contract claim, when the contract, by its plain language, limits the circumstances under which its attorney fees and costs are recoverable. For these

9

reasons, the judgment of the District Court which awarded Zycom attorney fees and costs is reversed.

### ISSUE 2

Did the District Court err when it denied Habets' motion for an award of sanctions against Shull and his attorneys pursuant to Rule 11, M.R.Civ.P.?

We review a district court's conclusions regarding Rule 11, M.R.Civ.P., sanctions for an abuse of discretion. *Wise v. Sebena* (1991), 248 Mont. 32, 38, 808 P.2d 494, 498 (citing *D'Agostino v. Swanson* (1990), 240 Mont. 435, 446, 784 P.2d 919, 926).

We have held that the Montana Rules of Civil Procedure allow sanctions to be imposed on two grounds: "(1) if a pleading is frivolous, i.e., not 'well grounded in fact' or 'warranted by existing law . . .' or (2) if a pleading is 'interposed for any improper purpose . . . .'" *Wise*, 808 P.2d at 498. We have also held that "[d]istrict courts have 'wide latitude to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics . . . .'" *Wise*, 808 P.2d at 498 (quoting *D'Agostino*, 784 P.2d at 926).

Habets claims that Shull and his attorneys knew, after reasonable inquiry, that there was no basis well grounded in fact or warranted by existing law to support their position that a partnership existed between Shull and Habets.

10

Shull and his attorneys respond that their claim that a de facto partnership existed was made in good faith and was well grounded in fact and existing law since it fit within the statutory definition of a partnership. Shull also points out that the District Court refused to grant Habets' motion for summary judgment on the question of whether a partnership existed.

We conclude that the District Court did not abuse its discretion. The judgment of the District Court which denied Habets' motion for sanctions is affirmed.

<u>ISSUE 3</u>

Should sanctions be imposed against Habets for filing a frivolous appeal?

We have held that "[w]here a reasonable ground for appeal exists no sanctions under Rule 32 [M.R.App.P.] will be imposed." *Searight v. Cimino* (1988), 230 Mont. 96, 103-04, 748 P.2d 948, 952 (citing *Erdman v. C & C Sales, Inc.* (1978), 176 Mont. 177, 184, 577 P.2d 55, 59).

Shull moved for the imposition of sanctions against Habets for frivolously appealing the denial of his motion for sanctions. Rule 32, M.R.App.P., states that "[i]f the supreme court is satisfied from the record and the presentation of the appeal . . . that the [appeal] . . . was taken without substantial or reasonable grounds . . . damages may be assessed . . . ." In this case, based on the record, we are not satisfied that Habets' appeal was taken

11

without substantial or reasonable grounds. We conclude that sanctions against Habets are not appropriate.

The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion on issues two and three. I respectfully dissent on issue one, whether the District Court erred in awarding attorney fees to Zycom. It is my view that the Court improperly relies on our decision in Sliters as authority for resolution of the issue before us; in doing so, it fails to address other language from Sliters which forms the basis for an appropriate analysis of the language of § 28-3-704, MCA, and the application of that language to this issue.

I agree that, in Montana, attorney fees cannot be recovered unless so provided by statute or contract. I also agree that, initially, Zycom's right to attorney fees is that provided in the Shull-First Interstate lease; as assignee of First Interstate, Zycom was entitled to attorney fees in the event Shull breached the lease.

I disagree with the Court's determination that Sliters addressed the issue of whether the party with the original contractual right to attorney fees can receive an "expanded" right under § 28-3-704, MCA, because Sliters is clearly distinguishable from the case now before us. There, Ross was the original payee of Lee's promissory note and, under the note's provisions, had a right to recover attorney fees incurred to enforce collection of the note. Ross assigned all of his interest in the note to Sliters. When Sliters sued Lee under the note, Lee filed a third-party complaint against Ross. Ross prevailed on Lee's third-party claims and then sought attorney fees pursuant to § 28-3-704, MCA, for

13

successfully defending against Lee's claims.

We stated that Ross' right to attorney fees "must stand or fall upon the provisions of the note." Sliters, 641 P.2d at 476. We did so because Ross--having assigned all his interest in the note to Sliters--was left with "no remaining contractual right to attorney fees under the provisions of the note." Sliters, 641 P.2d at 476. The case before us now presents an entirely different factual scenario. Here, Zycom remained a party to the lease as First Interstate's assignee; as such, it clearly retained its original right to attorney fees under the lease.

In addressing Ross' right to fees in Sliters, we also noted that Lee's third-party complaint against him was not an action on the note itself. Sliters, 641 P.2d at 476. Thus, in Sliters, our discussion properly began and ended with the provisions of the note; § 28-3-704, MCA, never came into play. Here, Shull's claim against Zycom **was** for a breach of the lease containing the attorney fee provision.

It is clear that, as a result of the factual scenario presented in Sliters, we did not reach the issue before us now-- whether the party with the original contractual right to fees has, via application of § 28-3-704, MCA, the right to fees when **it** is sued under the contract and prevails. We did state in Sliters, however, that the statute "provides mutuality of obligation and remedy between the parties to a promissory note expressly providing for attorney fees." Sliters, 641 P.2d at 476. We properly did not reach a conclusion there about the impacts of the statute because

14

of the facts presented, where Ross retained no interest in the note and the action against him, on which he prevailed, was not on the note.

It is my view that the case before us--unlike <u>Sliters</u>--does require an analysis of the statute and our statement that the statute provides mutuality of both obligation and remedy, in order to determine whether Zycom has a right to attorney fees here. Briefly stated, Zycom's argument for entitlement to those fees is that Shull clearly would have been entitled to fees had he prevailed in his breach of lease claim against it; as a result, according to Zycom, it is entitled to attorney fees as the prevailing party on Shull's breach of lease action against it.

In pertinent part, § 28-3-704, MCA, provides that, in any action on a contract providing an express right to attorney fees to one party, "all parties to the contract . . . shall be deemed to have the same right to recover attorney fees and the prevailing party in any such action . . . shall be entitled to recover his reasonable attorney fees from the losing party . . . ." This statutory language is the basis for our statement in <u>Sliters</u> that the statute provides "mutuality of obligation and remedy" between all parties to a contract expressly providing a right to attorney fees to one party.

Applied here, the statute and our "mutuality of remedy" language in <u>Sliters</u> require us to affirm the District Court's award of attorney fees to Zycom. A contract between Shull and Zycom existed, which provided an express right to attorney fees to Zycom.

15

Shull brought an action against Zycom under the contract. At that point, § 28-3-704, MCA, came into play, all parties had the same right to attorney fees, and the prevailing party was entitled to recover those fees. Thus, had Shull prevailed on his breach of lease claim against Zycom, he would have been entitled to fees from Zycom as the prevailing party. Under the same analysis, Zycom is entitled to attorney fees here as the prevailing party in Shull's action on the lease.

The Court's inappropriate reliance on Sliters, and its consequent failure to analyze the issue before us in this case, produce an incorrect result. More importantly, the Court's action casts doubt on our "mutuality of obligation and remedy" language and leaves our earlier "prevailing party" decisions under the statute in a state of confusion. I cannot agree. I would affirm the District Court's award of attorney fees to Zycom.

_____<br>
Justice

December 15, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Joe Bottomly, Esq.; Anne Biby, Esq.
Bottomly Law Offices
P.O. Box 1976
Kalispell, MT  59903-1976

Robert J. Emmons, Esq.
Emmons & Sullivan
608 Strain Bldg.
Great Falls, MT  59401

L.D. Nybo, Esq.
Conklin, Nybo & LeVeque
P.O. Box 2048
Great Falls, MT  59403-2048

Gary Deschenes
Attorney at Law
P.O. Box 3502
Great Falls, MT  59403-3502


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy